## Williams, Admx. v. Inter-Southern Life Insurance Co.

(Decided May 24, 1918.)

### Appeal from Christian Circuit Court.

Insurance—Life Insurance—Settlement—Action to Set Aside.— Where an insured person paid, and the company tentatively received his premium after his policy had lapsed for the non-payment of premiums when due, but he refused to furnish a physician's certificate showing he was in good health, which the policy required as a condition to reinstatement, and notified the company that rather than be examined, it could keep the policy, whereupon the company returned the premiums to the insured and he made no claim against the company during his life, his personal representative will not be permitted to set aside the settlement after his death.

GEORGE H. GALLOWAY and TRIMBLE & BELL for appellant.

HELM BRUCE, CLARENCE C. SMITH and HUNTER, WOOD & SON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

By this action the appellant, as the administratrix of the estate of Benj. W. Williams, deceased, sought

to recover $1,000.00 under a policy issued Nov. 4, 1905, upon the life of the decedent. The amount of the cash surrender value of the policy is the only disputed fact, and it is settled by an express provision of the policy.

The policy was issued upon the twenty payment life plan, and the annual premium was $38.34, with a grace of thirty days for its payment. Williams paid eight premiums. At the time he paid the eighth premium on Nov. 4, 1912, Williams borrowed $182.00 from the company, which was the full loan value, and only fourteen cents less than the full cash surrender value of the policy. Williams executed his note to the company for $182.00, bearing interest at five per cent., payable annually in advance.

When the ninth premium became due on Nov. 4, 1913, the company had apportioned a dividend of $5.91 upon this policy, which was credited upon the premium, leaving $32.43 due thereon. There was also due the annual interest charge of $9.10 upon the note. Accordingly, when the ninth premium became due, Williams' account with the company stood as follows:

| | |
|---|---|
| Ninth premium. Due Nov. 4, 1913 | $38.34 |
| Less dividend credited thereon | 5.91 |
| Leaving net balance on premium of | $32.43 |
| Plus 1 year's interest on loan | 9.10 |
| Total due | $41.53 |

The usual premium notice was mailed to Williams on October 9, 1913, and was received by him. Williams, however, mislaid the notice; and presumably acting from memory, on Nov. 21st, he sent the company a check for $32.85. The company cashed the check and placed the proceeds in an account designated as ''Items subject to return''; wrote Williams reminding him that his check was $8.68 short of the amount due the company; and requesting a check for the balance. The grace period for the payment of the premium expired December 4, 1913; and by the terms of the note, if the amount of the loan with interest should equal or exceed the cash value of the policy, the policy should lapse, without demand or notice, and in case of lapse, the insured could be reinstated only upon payment of his debt accompanied by a physician's certificate that he was in good health.

On Deccember 4th, the company wrote Williams notifying him that his period of grace expired on that day; urging him to send a check for his unpaid balance; and saying he could be reinstated upon presenting the requisite health certificate. Williams ignored this letter.

On January 28, 1914, the company again wrote him to the same effect. On February 2, 1914, Williams sent the company a check for $8.68 to pay his balance due Nov. 4, 1913, but failed to send the health certificate. Williams explained that he had moved from Trenton, Ky., to Hopkinsville, Ky.; that his health was good; and that if the company required him to go back to Trenton to be examined there by Dr. Gower it "could just return his check and cancel the policy."

On February 24th, and again on February 28th, the company wrote Williams requesting him to submit to a physical examination, and advising him that until an examination was made his remittance could not be applied in payment of his premium. The company wrote Williams similar letters on March 7th and March 25th, to which he made no reply.

Finally, on May 4, 1914, the company sent Williams a check for $41.53 in satisfaction of his two payments, made as above explained, advising him that his policy had lapsed; but, that if he should care to reconsider and reinstate the policy it would instruct Dr. Stone to make the necessary examination. To this letter Williams replied on May 5th, acknowledging the receipt of the company's letter and check, and saying that "rather than be examined you may keep my policy."

The company closed the correspondence on May 8th, by acknowledging the receipt of Williams' letter of May 5th, and advising him that he had secured the full cash value of his policy in the loan of 1912, and that the return of the $41.53 to Williams "settles in full of all amounts due you under the policy." Nothing further passed between the parties, and Williams died in the following July.

The case was, by agreement, tried by the court without a jury, and resulted in a judgment for the company. The plaintiff appeals.

The plaintiff rested her case below, and now asks a reversal, upon two grounds: (1) that the company brought about the surrender of the policy through false representations, and (2) that when the premium became due on Nov. 4, 1913, the cash surrender value of the policy

exceeded Williams' indebtedness to the company by $21.04, and that the policy did not lapse for that reason.

The first ground is not sustained by any proof, and will be passed without further comment. The second ground is based upon a mistake of fact, since the policy, on its face, shows that its cash surrender value after the payment of eight premiums was $182.14, and not $211.72 as claimed by appellant. But without going into a discussion of that feature, we deem it sufficient to say that Williams agreed to the cancellation of his policy and received back his money amounting to $41.53. He never afterwards made any claim against the company; and the company certainly never thereafter had any money whatever in its hands that could have been applied to the payment of the ninth premium.

Williams and the company having agreed upon a settlement of the differences between them, it will not be disturbed after his death.

Judgment affirmed.